Taxi,on, Chief-Justice.
 

 I have not been able to ascertain in what manner slaves, accused of capital offen-ces, were tried before the year 1741: the collections of the laws which I have seen, are silent on that
 
 subject;
 
 but it may be conjectured that the County Courts entertained jurisdiction.
 
 *
 
 Among the very few events, con-
 
 *435
 
 «ected with the early settlement of the State, which history has condescended to notice, that of an insurrection of the slaves, in 1738, has come down to us j and I infer from the period of its occurrence, that it suggested the rigorous and detailed system of police which was established in two or three years afterwards. Accustomed, ■as our ancestors were, to the usages of the Common Law, and its solemnity in capital trials, they were probably impelled by a sense of common danger, and the duty of self-preservation, to vest this extraordinary jurisdiction in three justices and four freeholders, who might be hastily collected at the court-house, and proceed to the condemnation and execution of a slave, without indictment, jury, or notice to the owner. Had such a special jurisdiction, so wholly out of the course of the Common Law, been created without any specification of the sort of testimony it should require, it is to be apprehended, that very slight circumstances would have led to a conviction ; more especially in cases of conspiracy and insurrection, trials for which, have in our own day, produced monstrous injustice.
 
 *
 
 It was a salutary, caution, to the triers, not to infer from the unusual mode of trial,
 
 *436
 
 fuat they should be satisfied with weaker evidence than the Common Law prescribes 5 and, since every other form by which the Law aims to secure an impartial trial was withdrawn from slaves, the Legislature prescribe, that rather more evidence shall be demanded for their conviction, than is in general necessary. Reasoning of this kind occasioned, as I think, the act of 1741 to declare, that the triers should “ receive such testimony of negroes, mulattoes, or Indians, bond or free, with pregnant circumstances, as to them shall seem convincing.” When the act of 1793 extended the trial by Jury to slaves, 1 strongly incline to believe, that it was a virtual repeal of so much of the above section, as differs from the Common Law rule of
 
 evidence;
 
 and that conferring the right of trial by Jury in open Court, does,
 
 ij)so
 
 facto, draw after it, as an incident, the Common Law principles of evidence, and all the consequences of Common Law proceedings. I do not, however, rest my opinion solely on this ground. It is to be observed, that every time the Legislature have touched this subject since the revolution, it has been for the purpose of improving the condition of slaves, more especially in admitting them to the benefit of an impartial trial in capital cases. The act of 1816, giving the Superior Courts exclusive jurisdiction of capital crimes, committed by slaves, extends to those persons the full benefit of a Common Law trial, indictment, the benefit of counsel and clergy, and the right of challenge for
 
 cause;
 
 withholding only the peremptory challenge, which could scarcely have been of any use to them. Tiie first section directs,
 
 “
 
 that tiie trial shall be conducted in the same manner, and under the same rules, regulations, and restrictions, as trials for freemen are now conducted.” This, it seems to me, is full authority to the Superior Courts to look at the Common Law for the rules of evidence, modified as they are in relation to coloured persons, by the act of 1777
 
 ;
 
 and I cannot doubt that the first section, taken together with the repealing
 
 *437
 
 clause, does annul the 48th section of 1741. But why should the act of 1816, which does the Legislature so much honor, be so construed as to place slaves on a better footing, in respect to evidence, than free persons ? On the "trial of the latter for a capital crime, sworn to only by one witness, the Jury is instructed to judge of the credibility of the witness, and, if they believe him, that one is sufficient to convict, without any pregnant circumstances. Whereas, if the rule of 1741 is still in force, the Jury must be told, that however well satisfied they are with the testimony of one witness, or thoroughly convinced of the guilt of the slave, they must nevertheless acquit him in the absence of pregnant circumstances
 
 ;
 
 and this, notwithstanding the previous finding of the bill by a grand Jury, and the examination of the case in a way the most favorable to the discovery of truth. If the grand Jury cannot find the bill upon the testimony of one credible witness, without pregnant circumstances, nor the petit Jury convict, then the trial is not conducted “ in the same manner, and under the same rules, regulations, and restrictions, as trials of freemen are now conducted.’5 Tf criminal slaves cannot be punished for crimes which are usually committed with the most studied secrecy, but through a species of evidence not always to be had, and which, if obtained, could not deepen the conviction arising from the testimony of a credible
 
 witness;
 
 it is to be apprehended that a mischievous stale of impunity will be the consequence.
 

 There is one circumstance tending to shew, that the Legislature of 1802 did not believe the provision of 1741 was in force, for in the act “ to prevent conspiracies and insurrections among the slaves,” the rule of evidence is re-enacted in relation to these crimes. Now the act of 1741 made it applicable, not only to those offences, but to all others, and if it were not repealed by 1793, must have been in force in 1802. The act last noticed was passed soon after some disturbances had arisen among (he slaves in the lower part of the State., and the clause
 
 *438
 
 was probably re-enacted for the purpose of tempering that excess which public excitement liad produced in the trials for these oiFences. Upon the whole, I think the conviction is right.
 

 Henderson, Judge.
 

 The act of 1741 erects a Court for the trial of slaves, composed of three or more justices of the peace and four freeholders, and empowers and requires them to take for evidence, the confessions of the offender, the oath of one or more credible witnesses, or such testimony of negroes, mulattoes, or Indians, bond or free, with pregnant circumstances, as to them shall seem convincing, without the solemnity of a Jury. As long as this Court remained, under any modification, the testimony prescribed by the act remained with it. But when the trial of slaves was transferred, first to the County Court, by the act of
 
 1793,
 
 and then to the Superior Court, by the act of 1816, Courts proceeding by known and established rules of evidence,' the evidence prescribed to the Court established by the act of 1741, was not transferred with the jurisdiction, but the rules established in the Court to which cognizance of the of-fence was transferred or given, became the rule of decision
 
 ;
 
 and it is, not at all like the case of-treason or perjury to which it was attempted to liken it, for in them the rules of evidence are attached to the offence, and will follow its trial to any
 
 Court;
 
 but the rule prescribed to the Court established by the act of 1741, is attached to the Court, and is confined to trials in that Court, or to a Court modified from that. I lay no stress on the words in the act of 1816, “ rules, regulations and restrictions,’5 it is most probable they relate only to the form of the trial $ nor shall I search for reasons which might have induced the Legislature to require
 
 pregnant circumstances
 
 in one Court, and not in the other $ or why, by the act of 1802, to punish slaves for
 
 conspiring
 
 to rebel or make insurrection, or to commit murder, again prescribes the same rules as to the evidence, and particularly that .the
 
 *439
 
 testimony of one negro, or person of colour, shall not be deemed conclusive or sufficient to convict, without
 
 pregnant drmmstances,
 
 thereby strongly implying, that it was considered that the rule of evidence prescribed to the Court established by the act of 1741, was.no longer in force ; but I know in practice the same thing is often, for greater caution, re-enacted. I think this case is clear, upon the grounds, that the rule as to pregnant circumstances was prescribed to another Court than the one before which this slave was tried 3 that the latter Court was in existence before the transfer of cognizance.; that at the time of the transfer it had rules of its own, including the rules of evidence by which it ascertained the disputed facts 3 that by the act of 1777, negroes, Indians, and mulattoes are declared to be competent witnesses against each other, without calling in the aid of Legislative intention arising from other acts. I can see no error in the Judge’s charge, and no grounds for a new trial. Let the rule be discharged.